UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**MARK BAUMKEL, on behalf of himself
and all others similarly situated,**

                **Plaintiffs,**

**v.**                                          **CASE NO. 08-14137**
                                        **HONORABLE DENISE PAGE HOOD**


**THE SCOTTS MIRACLE-GRO CO.,
an Ohio corporation, d/b/a SCOTTS LAWNSERVICE,
EG SYSTEMS, INC., an Indiana corporation, d/b/a
SCOTTS LAWNSERVICE,**

                **Defendants.**
_____/


## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING ACTION

## I.   INTRODUCTION

        This matter is before the Court on Defendants' Motion to Dismiss, filed on January 15, 2009.

Plaintiff filed a Brief in Opposition to Defendants' Motion to Dismiss on February 9, 2009.[1]  On

February 19, 2009, Defendants filed a Reply Brief in Further Support of their Motion to Dismiss.

[2]  A hearing on this matter was held on April 29, 2009.[3]

_____

        [1]  Plaintiff filed a Corrected Brief in Opposition on February 10, 2009.

        [2]  Additionally, on February 25, 2009, Plaintiffs filed a Motion for Leave to File a Second Amended Class Action Complaint seeking to add a count alleging Trespass, and an additional allegation in Plaintiff's breach of contract claim.  The Magistrate Judge granted in part and denied in part Plaintiff's request on April 3, 2009.  The April 3, 2009 Order denied amendment to include a count of Trespass, but granted the request to include paragraph forty-seven (47) to the breach of contract claim.  Paragraph forty-seven (47) of Plaintiffs' Second Amended Complaint states:

II.     **STATEMENT OF FACTS**

Plaintiff, Mark Baumkel, on behalf of himself and all others similarly situated, files this

action pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § § 1332(d)(2) and (d)(6).

Plaintiff brings claims for breach of contract, unjust enrichment, and violation of the Michigan

Consumer Protection Act against Defendants, The Scotts Miracle-Gro Company (SMG) and EG

Systems, Inc. (EG).  Plaintiff asserts that Defendants operate in Michigan under the name Scotts

LawnService (SLS), which provides lawn care services to homeowners.  These services include a

lawn assessment and a treatment strategy, which may include fertilizer applications, pesticide

applications, and/or herbicide applications.

Plaintiff entered into a contract with Scotts LawnService in March of 2008 to provide lawn

care services in exchange for payment of a specified fee.

The use of pesticides is regulated by the U.S. Environmental Protection Agency (EPA), and

the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), which requires that all lawn care

products that contain pesticides must be registered with the EPA before they can be lawfully sold

---

In addition, Defendants' application of illegal and unregistered pesticides to the
lawns of Plaintiff and the Class members, breached the implied terms of good
faith and fair dealing.

*See* Doc. No. 29, Plf.'s Second Am. Compl., ¶ 47.  On April 8, 2009, Defendants filed a
Supplemental Brief in Support of their Motion to Dismiss addressing Plaintiff's New Good Faith
and Fair Dealing Allegation, and Plaintiffs filed a Supplemental Brief in Opposition to
Defendants' Supplemental Brief in Support of Their Motion to Dismiss on April 15, 2009.
Defendants filed a Reply in Support of their Motion to Dismiss Addressing Plaintiffs' New Good
Faith and Fair Dealing Allegation on April 17, 2009.

[3] After the hearing, Defendants filed a Notice seeking to clarify counsel's response to
this Court's question on the issue of personal jurisdiction.

2

or distributed.

On May 9, 2008, Defendants issued a public recall of four pesticides that the EPA found were unregistered, falsely and misleadingly labeled, or both.  In May of 2008, Plaintiff received a notice that at least one of the recalled illegal pesticides, number 538-304, which contained .28% Halts Pro, had been used on his lawn.  Plaintiff alleges that Defendants' use of illegal pesticides is neither isolated or random, but a pattern of distributing unapproved pesticides to unsuspecting consumers.  Plaintiff further asserts that customers paid for Defendants' lawn care services based on the express and/or implied agreement that defendant was not using illegal pesticides.  Plaintiffs also argue that by failing to register these pesticides, Defendants saved costs in research and application materials and registration fees.  It is Plaintiff's contention that in doing so, Defendants violated the express and/or implied agreement not to use illegal pesticides and risked exposing Plaintiff and other customers to potentially hazardous pesticides.

Plaintiff alleges a breach of contract claim in Count I of the Second Amended Class Action Complaint, arguing that Defendants failed to provide Plaintiff and the Class members with safe and lawful lawn care services despite Defendants' contract which contains the language "satisfaction guarantee" and "[y]ou take no risk with Scotts LawnService . . . service programs."  *See* Doc. No. 29, Plf.'s Second Am. Compl., ¶ 43.  By failing to provide the promised services, Defendants breached Plaintiff's and the Class members' contracts, as well as breached the implied terms of good faith and fair dealing in said contracts.  In the alternative, Plaintiff asserts a claim of unjust enrichment in Count II of his Second Amended Class Action Complaint because Defendants received the benefit of Plaintiff's and the Class members' fees and it would be inequitable for Defendants to retain said benefits despite the use of illegal pesticides without disclosure or warning

3

because the amount of benefits received far outweighs the services received by Plaintiffs. Lastly, in Count III, Plaintiff asserts that Defendants violated Michigan's Consumer Protection Act, MICH. COMP. LAWS § 445.901, *et seq*. Plaintiff alleges that Defendants' use of the illegal pesticides caused Plaintiff and the Class members damages.

Defendants argue in their present motion that dismissal is warranted as to SMG pursuant to Federal Rule of Civil Procedure 12(b)(2), because the Court lacks personal jurisdiction over SMG, which has had no contacts with Plaintiff nor does SMG conduct any business in the State of Michigan. Defendants further assert that even if this Court had personal jurisdiction over SMG, this action should be dismissed because the Second Amended Class Action Complaint fails to state a claim against either SMG or EG.

## III.   APPLICABLE LAW & ANALYSIS

### A.   Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal for lack of jurisdiction over a person. Fed. R. Civ. P. 12(b)(2). When the issue of personal jurisdiction is raised, the burden of proof rests upon the party asserting jurisdiction. *Market/Media Research, Inc. v. Union-Tribune Publishing Co.*, 951 F. 2d 102, 104 (6th Cir. 1992). This burden can be met with establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F. 3d 883, 887 (6th Cir. 2002) (quotation and citation omitted). The facts will be construed in the light most favorable to the nonmoving party. *Id.* The court need only determine whether the plaintiff presented a prima facie showing of jurisdiction on the face of the complaint. *Market/Media Research, Inc*., 951 F. 2d at 104. This may include the pleadings and any affidavits to support any factual allegations. *Id.* Dismissal

4

is warranted only if all the facts plaintiff asserts "collectively [fail] to state a prima facie case for jurisdiction." *Id.* at 105. A district court is not required to hold an evidentiary hearing when a plaintiff's pleadings and affidavits are insufficient to make a prima facie showing of fact supporting the court's assertion of in personam jurisdiction. *Id.* at 106.

The Court may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the Michigan long-arm statute and the Due Process Clause. *See Calphalon Corp. v. Rowlette,* 228 F. 3d 718, 721 (6th Cir. 2000) ("In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists."). Michigan's long-arm statute provides both "general" and "limited" jurisdiction over nonresident corporations. General personal jurisdiction over corporations exists when:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts or record of this state to exercise general personal jurisdiction over a corporation and to enable such courts to render personal judgments against the corporation: (1) Incorporation under the laws of this state; (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745; (3) the carrying on of a continuous and systematic part of its general business within the state.

MICH. COMP. LAWS § 600.711. With respect to limited personal jurisdiction over a corporation or its agent, Michigan law provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state; (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) The ownership, use, or possession of any real or tangible personal property situated within the state; (4) Contracting to insure any person, property, or risk located within this state at the time of contracting; (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

5

Michigan courts have construed Michigan's long-arm statute to bestow the greatest possible grant of personal jurisdiction consistent with due process. *See Sifers v. Horen*, 385 Mich. 195, 199; 188 N.W.2d 623 (1971). Where a state's long-arm statute extends to the constitutional limits of the Due Process Clause, the two inquiries merge; courts must only determine whether an assertion of personal jurisdiction violates the Due Process Clause. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F. 3d 790, 793 (6th Cir. 1996). The Sixth Circuit has set forth a three-part test to determine whether due process requirements have been met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise form the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc*. 106 F. 3d 147, 150 (6th Cir. 1997) (known as the *Mohasco* factors set forth in *Southern Mach. Co. v. Mohasco Indus., Inc*., 401 F. 2d 374, 381 (6th Cir. 1968)).

Plaintiff alleges that "Defendant EG Systems, Inc. is affiliated with Defendant The Scotts Miracle-Gro Company" and both do business as 'Scotts Lawn Service' Plaintiff's asserts that its claims apply to both entities. *See* Doc. No. 29, Plf.'s Second Am. Compl., ¶ 10. Defendant argues that EG is a subsidiary of SMG, an Ohio holding company whose sole activity is to hold stock in its subsidiaries. *See* Ex. A, Defs.' Mot. to Dismiss, Crowder Decl. ¶ 3, 8. Christopher Crowder, SMG's Assistant Corporate Secretary indicates that he can testify to the following facts: (1) SMG has no office, place of business, or employees in the State of Michigan, (2) SMG is not authorized to conduct any business in the State of Michigan, (3) SMG does not sell any products or services in the State of Michigan, nor does it do business as Scotts Lawn Service. *Id.* at ¶ 4-6, 9, 12. Mr. Crowder further declares that SMG websites, www.scotts.com and www.scottsmiracle-gro.com do

6

not sell any products or services.  *See* Notice of Filing, Ex. 1.   Rod Imbriani, Vice President of Marketing for EG Systems, Inc., which does business as Scotts LawnService, and which has the website www.scottslawnservice.com, stated that the website does not sell any products but does (since January of 2009) have a feature allowing consumers to sign up for the company's lawn care services.  *Id.*, Ex. 2.

"Mere ownership of a subsidiary that conducts business in the forum state is one factor which weighs in favor of sufficient minimum contacts, but it is not of itself significant enough to establish personal jurisdiction over the parent corporation."  *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717, 721 (E.D. Mich. 2003). However, a district court may assert personal jurisdiction over a parent corporation when the subsidiary's contacts are attributed to the parent corporation or where the "the parent purposefully avails itself of doing business in the forum by accessing the market through a subsidiary."  *Id.*  In order to succeed on a theory that EG Systems is the alter-ego of SMG, Plaintiff must demonstrate, either through his pleadings, or affidavits that this cause of action arises out of SMG's contacts with Michigan.  *Id.* at 721-23.  Plaintiff has failed to make such a demonstration.

SMG asserts that it does not sell any products or services but is only an Ohio holding company, whose function is to hold stock in its subsidiaries.  Plaintiff's Second Amended Class Action Complaint states that on May 9, 2008, the EPA issued a public recall of unregistered pesticides, including pesticides that were used on Plaintiff's lawn. *See* Doc. No. 29, Plf.'s Second Am. Compl., ¶ 20, 22.  The Second Amended Complaint further alleges that the EPA website addressing this recall explained that:

> a.   In April and May 2008, EPA ordered The Scotts Miracle-Gro Company and its affiliates . . . to stop distributing and selling four pesticide products that were unregistered or improperly labeled.  Scotts recalled these products from retailers, consumers, and the company's lawn care affiliate, Scotts

> LawnService. . . As part of EPA's investigation into Scotts pesticide products, in June, September and October 2008, EPA issued 'stop sale, use or removal' orders for 11 more Scotts products . . . .

*See* Doc. No. 29, Plf.'s Second Am. Compl., ¶ 21. This recall notice is insufficient to withstand dismissal of SMG for lack of personal jurisdiction. Plaintiff has submitted no evidence that SMG has direct control or wholly funds its subsidiaries. Nor is there any other indication that SMG is anything other than a passive owner of its subsidiaries stocks. As such, it cannot be argued that SMG 'purposely availed itself' by doing business through its alter ego, EG Systems. Nor has Plaintiff established that any conduct on the part of SMG in the forum state, resulted in this cause of action. Without sufficient contacts, assertion of personal jurisdiction over SMG will be unreasonable and violate due process. Lastly, the Court will not entertain Plaintiff's allegation that SMG is subject to this Court's jurisdiction because it conspired with Scotts LawnService as there is no claim of conspiracy alleged in the Second Amended Class Action Complaint.

### B.    Failure to State a Claim

#### 1.    Breach of Contract

Defendants also argue that Plaintiff's Second Amended Class Action Complaint is subject to dismissal because Plaintiff has failed to plead sufficient facts to state a claim for breach of contract. Defendants argue that Plaintiff has failed to state a claim because the contract at issue contains no obligation, express or implied, to provide 'safe and lawful lawn care service.' In any event, even if an obligation were found to exist, and Defendant breached this obligation, Plaintiff nonetheless fails to state a claim because he has not alleged any cognizable injury resulting from Defendant's alleged breach of the parties' contract.

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

8

sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

Plaintiff argues that "safety" and "legality" are terms of the contract because the contract contains the statement "satisfaction guarantee" with express terms which state that "You take no risk with Scotts LawnService." The contract further provides "10 Reasons You Can Trust Scotts LawnService" including "We use Scotts Ortho and Miracle-Gro superior products" and "We care about your lawn and the environment." It is Plaintiff's contention that by failing to provide safe and lawful lawn care services, Defendant breached its contractual responsibilities. Plaintiff also asserts that Defendant breached the contract terms of good faith and fair dealing, implicit in every contract, by providing a service utilizing a product in violation of FIFRA and state laws.

There is no dispute that a valid contract exists between the parties. However, under Michigan law, in order for Plaintiff to succeed on his breach of contract claim he must also establish "by a preponderance of the evidence the terms of the contract, and the defendant breached the terms of the contract, and that the breach caused plaintiff's injury." *In re Brown*, 342 F. 3d 620, 628 (6th Cir. 2003).[4]

There are no express terms in the written contract requiring Scotts LawnService to provide

---

[4] A federal court sitting in diversity applies the law of the state in which it sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

'safe and lawful lawn care services.' In any event, the terms Plaintiff relies on in support of his breach of contract claim are merely general marketing claims regarding Defendant's lawn care services. *See Uebelacker v. Paula Allen Holdings*, 464 F. Supp. 2d 791, 805-06 (W.D. Wis. 2006) ("Quality satisfaction guaranteed" is a classic example of commercial 'puffery' on which no reasonable person would rely."); *See also, Viches v. MLT, Inc.* 124 F. Supp. 2d 1092, 1098 (E.D. Mich. 2000) (holding that under Michigan law's definition of 'puffing,' a defendant's "slogan of a 'worry-free' vacation is . . . mere puffing and does not rise to the level of guaranteeing an 'injury free' vacation.") *Id.* In any event, Plaintiff concedes that the terms it relies upon in support of its theory that 'legality' and 'safety' are part of the parties' agreement, are implied terms rather than express terms. The Court reaches such a conclusion based upon Plaintiff's failure to address Defendants' argument regarding express terms in his Responsive Brief in Opposition to Defendants' Motion to Dismiss. *See* Docket No. 18.

A contract term may be implied only where circumstances surrounding the transaction indicate that such terms reflect "the actual intent of the parties at the time of contracting."

*Redinger v. Standard Oil Co.*, 6 Mich. App. 74, 79 (1967) (citing *W.J. Howard & Sons, Inc. v. Meyer*, 367 Mich. 300, 308 (1962)). Here, the parties' intent was for Defendants to provide lawn care services to Plaintiff's lawn, which included application of Defendants' products. Plaintiff has not alleged in his Complaint that Defendants failed to perform under the Contract. Rather, Plaintiff asserts that 'safety' and 'legality' were terms of the parties agreement. As such, it appears that Plaintiff's breach of contract claim is couched as a products liability claim. Plaintiff has failed to allege the circumstances surrounding the parties' transaction which rendered the terms 'safety' and 'legality' implicit in the parties' agreement.

10

As to Plaintiff's argument regarding Defendants alleged breach of an implied duty of good faith and fair dealing, Plaintiff asserts that "the breach is in Defendant's violation of the term of 'trust' . . . ." Plf.'s Br. in Opp., at 9. The relevant language in the parties' agreement is: "You can trust Scotts Lawn Service." *See* Sec. Am. Class Ac. Comp., Ex. 1. The implied duty of good faith and fair dealing does not apply where express provisions of the parties' contract govern. *See Ferrell v. Vic Tanny International, Inc*. 137 Mich. App. 238, 244; 357 N.W.2d 669 (1984); *See also, Van Arnem Co. v. Manufacturers Hanover Leasing Corp.*, 776 F. Supp. 1220, 1223 (E.D. Mich. 1991). The implied covenant of good faith and fair dealing applies when "a party to a contract makes the manner of its performance discretionary." *Busch v. Dyno Nobel, Inc*., No. 00-1808, 40 Fed. Appx. 947, 962 (6th Cir. July 18, 2002). It "serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Id.*

Here, the intent of the parties' agreement was for Plaintiff to pay for, and Defendant to provide lawn care services, including the use of its Scotts Miracle products. As such, under the contract, Plaintiff's lawn care services, and specifically, which Scotts Miracle products were appropriate for the care and maintenance of his lawn, was left to the discretion of Defendants. In *Busch*, the parties entered into an agreement to produce ethylene glycol, which included the design and construction "of a plant to provide an economical manufacturing process." *Id.* at 949. The *Busch* court concluded that there remained a question of fact as to whether the defendant breached the implied duty of good faith and fair dealing when the defendant "abandoned the project before it was fully operational . . . ." *Id.* at 963. The defendant had agreed to "provide such technical assistance and training as [the defendant] determines reasonably necessary to enable [the plaintiff] to properly install and operate the equipment . . . ." *Id.* at 962. Finding that this provision vested

11

discretion in the defendant which must be carried out in good faith, the *Busch* court held that "the provision governing technical assistance clearly vested discretion in [the defendant] to determine the adequacy of the training and technical support . . . . [The defendant] represented itself as having superior knowledge and training related to plant construction." *Id.* at 962. This is similar to the present matter, Defendants held themselves out to "have the right products for your lawn needs and we have a name you can trust." *See* Sec. Am. Class Ac. Comp., Ex. 1. Defendants were vested with the discretion to maintain and care for Plaintiff's lawn, including the application of Defendants' products, requiring that such services be carried out in good faith.

However, even if Plaintiff sufficiently alleged facts in support of his theory that Defendant breached the implied duty of good faith and fair dealing, Plaintiff has failed to allege any injury. Plaintiff alleges that "[a]s a direct and proximate result of Defendants' breaches of contract, Plaintiff and the Class members have incurred damages." *See* Sec. Am. Class Ac. Comp., at ¶ 48. The parties to a contract are entitled to the benefit of the bargain as set forth in their agreement. *See Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich App. 47, 54; 731 N.W.2d 94 (2006). The proper measure of damages is the difference between the actual value of full performance of the services bargained for, and the value of the performance actually received by the non-breaching party. *See Gross v. Morosky*, 366 Mich. 114, 116; 113 N.W.2d 863(1962).

In *Gross*, the sellers of rental property represented that it was a five-unit apartment building, even though the municipal regulation permitted use of the premises as a two-unit residential apartment building. *Id.* The Court found that despite the defendant's breach of the parties' agreement, the plaintiffs were not entitled to judgment in their favor because they were allowed to maintain the building as a five-unit rental property during the entirety of their possession of the

12

subject property, as such they were not prevented from utilizing the property in a manner consistent with the defendant's representations. *Id*. at 116-17.

In the matter before the Court, Plaintiff has failed to allege anything but conclusory allegations in regard to the injury he has suffered as a result of Defendant's alleged breach. There is no allegation that the products and services that Plaintiff actually received were of less value than the value of products and services that he expected to receive. Plaintiff argues that damages are uncertain at this state, but are a matter of fact to be established through discovery and further research. Plaintiff also asserts that a claim for breach of contract does not require establishment of damage or injury to the plaintiff. Plaintiff is simply incorrect and his reliance on *Scarff Bros., Inc. v. Bischer Farms, Inc*., in support of this contention is misplaced. 546 F. Supp. 2d 473 (E.D. Mich. 2003). In *Scarff,* the court held that "[i]n Michigan, a claim for breach of contract requires a showing of parties competent to contract, proper subject matter for a contract, legal consideration, mutuality of agreement, and breach." *Id.* at 485. The *Scarff* court was merely citing the law in Michigan for the a contract to be deemed valid, which must be established before a breach of that contract may be found.[5]   As such, the Second Amended Class Action Complaint fails to plead any injury resulting from Defendants' alleged breach.

### 2.   Unjust Enrichment

Plaintiff's unjust enrichment claim fails as a matter of law. If a plaintiff establishes 1) the

_____

[5]   "To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract. The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation.   Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach[] caused the plaintiff's injury." *Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.*, 342 F.3d 620, 628 (6th Cir. 2003) (internal quotations and citations omitted).

receipt of a benefit by defendant from plaintiff, and 2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). If the plaintiff can establish these elements, "the law will imply a contract in order to prevent unjust enrichment." *Id.* "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

Plaintiff incorrectly argues that if no breach of contract claim has been properly plead, then Plaintiff must be able to plead the alternative theory of unjust enrichment. The fact that Plaintiff cannot state a claim for breach of contract does not negate the fact that the parties indeed had an express contract for lawn care services. Plaintiff's argument that because the contract between the parties does not expressly contemplate the subject matter, or a provision governing the parties' rights in the event of illegal pesticide usage is similarly without merit. Plaintiff's unjust enrichment claim relates to the application of pesticides in connection with Defendant's lawn care services. *See Moon v. SCP Pool Corp.*, 2007 U.S. Dist. LEXIS 710, at *12 (E.D. Mich. Jan. 8, 2007) (a claim for unjust enrichment is unavailable when there is a contract governing the parties relationship, even if the parties "disagree on its scope, terms and effect.") As such, Plaintiff cannot allege an unjust enrichment claim in the alternative.

### 3. Michigan Consumer Protection Act

Plaintiff's claim under the MCPA also fails as a matter of law. Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ." MICH. COMP. LAWS § 445.903(1). However, the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. LAWS §

14

445.904(1)(a).

The Michigan Supreme Court has held that whether a transaction is exempted from the MCPA turns on "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards*, 478 Mich. 203, 210; 732 N.W. 2d 514 (2007). "[T]he exception requires a general transaction that is 'explicitly sanctioned.' *Id.* at 213. In holding that "residential home builders are exempt from the MCPA because the general transaction of residential home building, including contracting to perform such transaction, is specifically authorized by the Michigan Occupational Code (MOC)" the court relied on the following: (1) residential home builders are licensed under the MOC, (2) residential home builders are regulated by the Residential Builders' Maintenance and Alteration Contractors' Board, and (3) a set of administrative rules regulate the licensing procedure, and (4) the transaction at issue, contracting to build a residential home, is specifically authorized by law. *Id.* at 206, 213.

Similarly, in the present matter, the transaction at issue, the application of a pesticide as part of the provision of lawn care services is subject to regulation by not only federal law under the FIFRA, but also under Michigan law pursuant to the Michigan Natural Resources and Environmental Protection Act, MICH. COMP. LAWS § 324.8301, et seq. Part 83 of that statute regulates the distribution, sale, use and application of pesticides in the State of Michigan. Part 83 requires a commercial applicator of pesticides to obtain a certification and license from the MDOA in order to lawfully apply pesticides. See Mich. Comp. Laws § § 324.8311, -.8314, 324.8302(15). The regulations also provide that "[b]efore applying a pesticide, a commercial applicator who is required to be licensed by [Part 83] . . . shall enter into an oral or written service agreement with the customer." Mich. Admin. Code § 285.637.12(1). As such, the transaction at issue is exempted from

15

the MCPA as it is regulated by an expert agency with licensing, approval and enforcement authority; the lawn care services involving the application of pesticides is "specifically authorized" by law within the meaning of section 445.904(1)(a).

**IV.    CONCLUSION**

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss [**Docket No. 14, filed on January 15, 2009**] is GRANTED.

IT IS FURTHER ORDERED that this cause of action is dismissed.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 28, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager